UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


MARCO WEST,

          Petitioner,

                                         CASE NO. 06-CV-12057
v.                                      HONORABLE PAUL V. GADOLA

KURT JONES,

          Respondent.

_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS, DENYING REQUEST FOR EVIDENTIARY HEARING, AND DENYING A CERTIFICATE OF APPEALABILITY AND LEAVE TO PROCEED ON APPEAL IN FORMA PAUPERIS

**I.      Introduction**

      State of Michigan prisoner Marco West ("Petitioner") has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 asserting that he is being held in violation of his constitutional rights. Petitioner also seeks an evidentiary hearing as to the petition. Petitioner was convicted of second-degree murder following a jury trial in the Wayne County Circuit Court and sentenced to 15 to 30 years imprisonment in 2000. In his present pleadings, Petitioner raises claims concerning his sentence, the sufficiency of the evidence, his right of confrontation, the admission of hearsay testimony, prosecutorial misconduct, and the effectiveness of trial and appellate counsel. For the reasons stated, the Court denies the petition for writ of habeas corpus and the evidentiary hearing request. The Court also denies a certificate of appealability and leave to proceed on appeal *in forma*

*pauperis*.

## II. Facts and Procedural History

Petitioner's conviction arises from the death of George Jefferson Davidson in Detroit, Michigan in November, 1994. The Michigan Court of Appeals set forth the relevant facts, which are presumed correct on habeas review, *see Monroe v. Smith*, 197 F. Supp. 2d 753, 758 (E.D. Mich. 2001), *aff'd.* 41 Fed. Appx. 730 (6th Cir. 2002), as follows:

> In early November 1994 the victim, George Jefferson Davidson, was found murdered in the trunk of his car. He had died from both strangulation and a severed carotid artery. In March 1995, the police received information from a confidential informant that led them to seek the arrest of Willie Varner and his cousin, Lorenzo Green. Varner was arrested soon after the police received the confidential information and was released after providing the police with a statement. After evading the police for several months, Green turned himself in and implicated defendant in the murder. Thereafter, defendant turned himself in. At trial, Detroit Police Department Lieutenant John Morrell testified that defendant's arrest was sought based on Green's statements, and that defendant was taken into custody on the murder charge as well as some other outstanding warrants.

> The day after defendant was arrested, Lt. Morell read defendant his *Miranda* rights, had him sign a Constitutional Rights Certificate of Notification form, and began to question him regarding the incident. Defendant initially denied involvement in the murder, but later in the day admitted to some involvement. Because it was late in the day, Lt. Morell decided to resume the interview again the next day. As the interview resumed, Lt. Morell read defendant his *Miranda* rights and had him sign a Constitutional Rights Certificate of Notification form. Defendant asked to call his mother and after he did so, defendant gave a statement that Lt. Morell wrote down. Defendant signed each page of the written statement. Defendant was never denied food or drink.

> Defendant and Lt. Morell differ as to whether defendant requested a lawyer during his interrogation. Lt. Morell maintains that defendant asked twice whether he should get a lawyer, and that he told defendant that the choice was his. In addition, Lt. Morell maintains that at one point during his interrogation of defendant he asked defendant if he wanted to speak to an attorney and was told no. On the other hand, defendant maintains that he repeatedly asked for a lawyer during the questioning.

Defendant indicated in his statement that Green had told him that some guys had paid him to do something, but he did not know if he should do it because it involved a friend of his. Later that day, Green went to defendant's house with a truck and picked up defendant. Defendant maintained that he was initially unwilling to get into the truck because he thought it was probably stolen and he was on probation. Also, there was a bag on the seat of the truck with keys and handcuffs in it.

Defendant and Green went and picked up the victim. The defendant indicated that Green then dropped him off at home, but called shortly thereafter to tell defendant to go to a particular apartment. When defendant arrived, Green was "stripping" the victim's car. Defendant then went to his mother's house and, about twenty minutes later, Green pulled up in the victim's car and ordered defendant to get him a knife and some rope or wire. Defendant heard some bumping in the trunk, Green opened the trunk and defendant saw a person inside the trunk, kicking. Green told defendant to watch out to see if anyone was coming. A car drove by and defendant warned Green, who immediately closed the trunk. Green then asked for a knife and when defendant did not provide one, Green became upset and threatened to "smoke" both defendant and the victim. However, Green then told defendant that he did not need a knife and began choking the victim. When that was unsuccessful, however, Green slit the victim's throat.

After the murder, defendant and Green drove the car, with the victim in the trunk, to a shopping center in order to show it to another person. After that meeting, the car and body were abandoned in the parking lot and later found by a security guard.

Prior to trial, defendant moved for an evidentiary hearing to suppress the statements he made, arguing both that the statements were involuntary and that they were obtained in violation of his right to counsel. The trial court denied the motion to suppress, finding that because defendant's request for counsel was ambiguous his right to counsel was not violated. Defendant later requested a new attorney because he did not believe his attorney was spending adequate time on his case. The trial court denied defendant's motion for new counsel. Finally, at the conclusion of Lt. Morell's trial testimony, defendant moved for a mistrial on the basis that Lt. Morell's reference to the fact that defendant had other pending warrants for his arrest was prejudicial. The trial court denied the motion, but offered to provide a cautionary instruction to the jury. Defense counsel rejected the trial court's offer to give a cautionary instruction.

*People v. West*, No. 229708, 2002 WL 1998567, *1-2 (Mich. Ct. App. Aug. 27, 2002) (unpublished)

(footnote citation omitted).

Following his conviction, Petitioner filed an appeal as of right with the Michigan Court of Appeals asserting the following claims:

I.      The evidence was insufficient to support a finding that Defendant aided and abetted Lorenzo Green in the commission of murder.

II.     Defendant was denied a fair trial and due process under the Federal and State Constitutions when his jury was provided information about unspecified outstanding criminal charges and a conviction.

III.    There is reversible error where a police officer offsets the protections intended by a separate trial order and the Confrontation Clause and effectively communicates to the Defendant's jury that the principal, Lorenzo Green, implicated Defendant in his statement to the police.

IV.    The trial court erred in failing to suppress Defendant's statements.

V.     The trial judge's failure to inquire into the reasons for, and the factual basis of, Defendant's claim that he had not received adequate representation from his trial attorney was error and requires that this case be remanded for an evidentiary hearing.

The Michigan Court of Appeals affirmed Petitioner's conviction. *Id*. Petitioner filed an application for leave to appeal with the Michigan Supreme Court raising the same claims. That application for leave to appeal was denied. *People v. West*, 468 Mich. 876, 659 N.W.2d 238 (2003).

Petitioner then filed a motion for relief from judgment in the state trial court, raising the following claims in his initial motion and a supplemental pleading:

I.      Trial counsel was ineffective for failing to move for an all Detroit jury.

II.     Trial counsel was ineffective for refusing to allow Petitioner to testify.

III.    Trial counsel was ineffective for failing to object to Petitioner's statement as fruit of the poisonous tree.

IV.    The imposition of a sentence of 15 years minimum violated the *Cobbs* offer

of a five-year minimum.

V.     Trial counsel failed to make timely objections to prosecutorial misconduct.

VI.    Denial of Petitioner's right to a speedy trial.

VII.   The prosecutor's deliberate failure to file the required transcripts, in lieu of filing interlocutory to the appellate court, violated Petitioner's right to due process of law.

VIII.  Trial counsel's failure to challenge the appellate court's ruling was tantamount to defective representation.

The trial court denied Petitioner relief in orders issued on May 5, 2004 and December 16, 2005. Petitioner filed a delayed application for leave to appeal with the Michigan Court of Appeals raising the same claims and an ineffective assistance of appellate counsel claim, as well as a motion to remand for re-sentencing in light of *Blakely v. Washington*, 542 U.S. 296 (2004). The court denied the motion to remand and denied leave to appeal for failure to meet the burden of establishing entitlement to relief under MCR 6.508(D). *People v. West*, No. 260411 (Mich. Ct. App. Aug. 16, 2005) (unpublished). Petitioner's application for leave to appeal with the Michigan Supreme Court was similarly denied. *People v. West*, 474 Mich. 1026, 708 N.W.2d 426 (2006).

Petitioner thereafter submitted his federal habeas petition asserting the following claims:

I.     Petitioner was denied his Sixth Amendment right to a jury trial when the sentencing judge increased the presumptive sentencing range on the basis of its own finding of fact to which Petitioner did not admit and the historical record fails to support.

II.    Petitioner contends there was insufficient evidence to support a conviction that he aided and abetted in the murder of George Jefferson Davidson.

III.   Petitioner was denied his constitutional right to confront his accusers when the prosecutor elicited testimony from a police witness that the principal,

Lorenzo Green, implicated Petitioner in the murder.

IV.      The prosecutor committed misconduct when he injected hearsay testimony on direct examination of Lieutenant Morell.

V.      The prosecutor's deliberate failure to file required transcripts, in lieu of filing interlocutory to the appellate court violated Petitioner's 14th Amendment right to due process of law.

VI.      Petitioner was denied the effective assistance of counsel as guaranteed by the 6th Amendment to the United States Constitution.

VII.      Petitioner was denied the effective assistance of counsel as guaranteed by the 6th Amendment to the United States Constitution.

VIII.      Petitioner was denied the effective assistance of appellate counsel as guaranteed by the 6th Amendment to the United States Constitution when counsel failed to raise the issues presented in Petitioner's habeas corpus petition.

Respondent has filed an answer to the petition asserting that the claims should be denied for lack of merit and/or based upon procedural default. Petitioner filed a reply to that answer and a request for an evidentiary hearing on his ineffective assistance of counsel claims.

## III.    Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2241 *et seq*., governs this case because Petitioner filed his petition after the AEDPA's effective date. *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). The AEDPA provides:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1)      resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the

Supreme Court of the United States; or

(2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d) (1996).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002). "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694. "In order for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409.

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *See Williams*, 529 U.S. at 412; *see also Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). Section 2254(d) "does not require citation of

[Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16. While the requirements of "clearly established law" are to be determined solely by the Supreme Court's holdings, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

Lastly, this Court must presume that state court factual determinations are correct. *See* 28 U.S.C. § 2254(e)(1). A habeas petitioner may rebut this presumption only with clear and convincing evidence. *See Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

**IV.     Analysis**

A.     <u>Sentencing Claim</u>

Petitioner first asserts that he is entitled to habeas relief because the trial court violated his Sixth Amendment rights by relying upon facts not admitted by him nor proven beyond a reasonable doubt in mis-scoring certain offense variables and his sentencing guidelines. Respondent contends that this claim lacks merit and/or is procedurally defaulted.

Claims which arise out of a state trial court's sentencing decision are not normally cognizable upon habeas review unless the petitioner can show that the sentence imposed exceeded the statutory limits or is wholly unauthorized by law. *See Lucey v. Lavigne*, 185 F. Supp. 2d 741, 745 (E.D. Mich. 2001). In *Apprendi v. New Jersey*, 530 U.S. 466, 530 (2000), the United States Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the

penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." In *Blakely v. Washington*, 542 U.S. 296 (2004), the Supreme Court applied *Apprendi* to a state sentencing guideline scheme, under which the maximum penalty could be increased by judicial fact-finding, held that the state guideline scheme violated Sixth Amendment rights, and reiterated that any fact that increased the maximum sentence must be admitted by the defendant or proven to a jury beyond a reasonable doubt. *See United States v. Booker*, 543 U.S. 220, 232 (2005). Petitioner cites *Apprendi* and *Blakely* in his pleadings.

This claim lacks merit. The *Blakely* line of cases does not apply to Michigan's indeterminate sentencing scheme. In Michigan, the maximum sentence is established by statute and cannot be varied by the sentencing judge; the judge's only discretion is in setting the minimum sentence. The federal courts within this Circuit have examined Michigan's indeterminate sentencing scheme and have found no possible Sixth Amendment violation. *See Tironi v. Birkett*, No. 06-1557, 2007 WL 3226198 (6th Cir. Oct. 26, 2007) (unpublished); *Delavern v. Harry*, No. 07-13293, 2007 WL 2652603, *3-4 (E.D. Mich. Sept. 7, 2007); *Connor v. Romanowski*, No. 05-74074, 2007 WL 1345066 (E.D. Mich. May 4, 2007); *McNall v. McKee*, No. 1:06-CV-760, 2006 WL 3456677, * 2 (W.D. Mich. Nov. 30, 2006); *accord People v. Drohan*, 475 Mich. 140, 160-62, 715 N.W.2d 778 (2006).

Additionally, to the extent that Petitioner challenges the scoring of offense variables and his sentencing guidelines under state law, he is not entitled to relief. A claim that the state sentencing guidelines were incorrectly scored fails to state a claim upon which federal habeas relief can be granted. *See, e.g., Howard v. White*, 76 Fed. Appx. 52, 53 (6th Cir. 2003) (unpublished);

*McPhail v. Renico*, 412 F. Supp. 2d 647, 656 (E.D. Mich. 2006); *Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999). State courts are the final arbiters of state law and the federal courts will not intervene in such matters. *See Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987). Petitioner's sentence is within the statutory maximum. *See* Mich. Comp. Laws § 750.317. Habeas relief is not warranted on Petitioner's sentencing claim.[1]

> B. <u>Insufficient Evidence Claim</u>

Petitioner also asserts that he is entitled to habeas relief because the prosecution failed to present sufficient evidence to show that he was an aider and abettor so as to support his second-degree murder conviction. Respondent contends that this claim lacks merit.

In *Jackson v. Virginia*, 443 U.S. 307 (1979), the United States Supreme Court established that the standard of review for a sufficiency of the evidence challenge must focus on whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319 (emphasis in original)(citing *Johnson v. Louisiana*, 406 U.S. 356, 362 (1972)). Pursuant to 28 U.S.C. § 2254(d)(1), this Court must determine whether the state court's application of the *Jackson* standard was reasonable. In making this determination, the Court must presume that the state court's factual findings are correct, unless rebutted by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *Warren*, 161 F.3d at 360-61.

Under Michigan law, the common law crime of murder is defined as second-degree murder

---

[1]Given the Court's determination that this claim lacks merit, the Court need not address the procedural default issue as to this claim.

and is punishable by up to life imprisonment.  *See* Mich. Comp. Laws § 750.317.  To establish second-degree murder, the prosecution must prove that the defendant killed a human being with malice aforethought.  In order to show malice aforethought, the prosecution must establish that the defendant had:  (1) the intent to kill; (2) the intent to commit great bodily harm; or (3) the intent to create a very high risk of death or great bodily harm with the knowledge that death or great bodily harm is the probable result.  *See People v. Dykhouse*, 418 Mich. 488, 495, 345 N.W.2d 150 (1984).  Circumstantial evidence and reasonable inferences drawn therefrom may be sufficient to prove the elements of the crime, *see People v. Jolly*, 442 Mich. 458, 466, 502 N.W.2d 177 (1993), including a defendant's intent or state of mind.  *See People v. Dumas*, 454 Mich. 390, 398, 563 N.W.2d 31 (1997).

To convict a defendant under an aiding and abetting theory, the prosecution must establish that the crime was committed by the defendant or some other person, that the defendant performed acts or gave encouragement which aided or assisted in the commission of the crime, and that the defendant either intended to commit the crime or knew that the principal intended to commit the crime at the time he gave the aid or encouragement.  *People v. Carines*, 460 Mich. 750, 759, 597 N.W.2d 130 (1999).  An aider and abettor's state of mind may be inferred from all the facts and circumstances.  *Id*.

Applying the *Jackson* standard, the Michigan Court of Appeals found that the prosecution presented sufficient evidence to support Petitioner's second-degree murder conviction, stating in relevant part:

The prosecution presented sufficient evidence that defendant had knowledge that

Green intended to commit murder and that defendant assisted Green in the commission of the murder.

Green drove to the defendant's home with the victim in the trunk of his truck and asked defendant for a knife and some rope or wire. If he did not already know, Defendant became aware that the victim was in the trunk when Green opened it. Defendant complied with Green's request to serve as a lookout to ensure that passersby would not be able to see the victim in the open trunk. After the murder, defendant participated in showing someone that the victim had been killed and made no attempt to notify the authorities of Green's actions.

*West*, 2002 WL 1998567 at *2-3.

Having reviewed the record, the Court finds that the Michigan Court of Appeals' determination in this regard is neither contrary to *Jackson* nor an unreasonable application of the law or the facts. The record, including Petitioner's own statements to police, demonstrates that Petitioner aided and abetted Lorenzo Green in the murder of George Jefferson Davidson. Petitioner confessed that he knew that someone had paid Lorenzo Green to do something, that he saw handcuffs and keys in Green's truck, that he went with Green to get Davidson, that he later served as a lookout for Green while Davidson was confined in the car trunk, that he warned Green when another car approached the area, and that Green had asked him for a knife and some rope or wire before strangling and slitting Davidson's throat. Petitioner also admitted that he accompanied Green to a shopping center to show Davidson's body to another individual. Such facts provide sufficient evidence from which a jury could conclude that Petitioner knew of Green's intent to harm the victim and assisted Green in that endeavor so as to support Petitioner's conviction as an aider and abettor to second-degree murder.

Petitioner's insufficient evidence claim attacks the inferences that the jury drew from

evidence at trial. Such determinations, however, are not matters for federal habeas review. "A federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Walker v. Engle*, 703 F.2d 959, 970 (6th Cir. 1983). It is the job of the jury, not a federal habeas court, to resolve evidentiary conflicts. *See Jackson*, 443 U.S. at 326; *Martin v. Mitchell*, 280 F.3d 594, 618 (6th Cir. 2002). Given the evidence at trial, the Michigan Court of Appeals' decision that a rational trier of fact could find the elements of second-degree murder beyond a reasonable doubt was reasonable. Therefore, habeas relief is not warranted on this issue.

C.     Confrontation Claim

Petitioner next asserts that he is entitled to habeas relief because the prosecution violated his confrontation rights when Police Lieutenant John Morell testified that he arrested Petitioner based upon information received from Lorenzo Green. Petitioner cites *Bruton v. United States*, 391 U.S. 123 (1968). Respondent contends that this claim is barred by procedural default due to Petitioner's failure to object at trial and asserts that the claim otherwise lacks merit.

Federal habeas relief may be precluded on claims that a petitioner has not presented to the state courts in accordance with the state's procedural rules. *See Wainwright v. Sykes*, 433 U.S. 72, 85-87 (1977); *Couch v. Jabe*, 951 F.2d 94, 96 (6th Cir. 1991). A petitioner's procedural default in the state courts will preclude federal habeas review if the last state court rendering a judgment in the case rested its judgment on the procedural default. *Wainwright*, 433 U.S. at 85; *Coleman v.*

*Mitchell,* 244 F.3d 533, 539 (6th Cir. 2001).[2]  In such a case, a federal court must determine not only whether a petitioner has failed to comply with state procedures, but also whether the state court relied on the procedural default or, alternatively, chose to waive the procedural bar.  "A procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar."  *Harris v. Reed*, 489 U.S. 255, 263-64 (1989).  The last *explained* state court judgment should be used to make this determination.  *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-05 (1991).  If the last state judgment is a silent or unexplained denial, it is presumed that the last reviewing court relied upon the last reasoned opinion.  *Id.*

Here, the Michigan Court of Appeals rendered the last reasoned opinion on this issue.  In dismissing this claim, the court relied upon Petitioner's failure to object at trial.  *See West*, 2002 WL 1998567 at *4-5.  The failure to make a contemporaneous objection is a recognized and firmly-established independent and adequate state law ground for refusing to review trial errors.  *See People v. Carines*, 460 Mich. 750, 763, 597 N.W.2d 130 (1999); *People v. Stanaway*, 446 Mich. 643, 687, 521 N.W.2d 557 (1994); *see also Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991).  Moreover, a state court does not waive a procedural default by looking beyond the default to determine if there are circumstances warranting review on the merits.  *See Paprocki v. Foltz*, 869 F.2d 281, 285 (6th Cir. 1989).  Plain error review does not constitute a waiver of state procedural default rules.  *See Girts v. Yanai*, 501 F.3d 743, 755 (6th Cir. 2007); *Hinkle v. Randle*, 271 F.3d

---

[2]Confrontation errors and *Bruton* errors can be procedurally defaulted if the petitioner fails to properly preserve the claim in the state courts.  *See Mikesell v. Conley*, 51 Fed. Appx. 496, 505-06 (6th Cir. 2002).

239, 244 (6th Cir. 2001); *Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000). Nor does a state court fail to sufficiently rely upon a procedural default by ruling on the merits in the alternative. *See McBee v. Abramajtys*, 929 F.2d 264, 267 (6th Cir. 1991). The Michigan Court of Appeals denied Petitioner's claim based upon a procedural default – the failure to object at trial.

A state prisoner who fails to comply with a state's procedural rules waives the right to federal habeas review absent a showing of cause for noncompliance and actual prejudice resulting from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 753; *Gravley v. Mills*, 87 F.3d 779, 784-85 (6th Cir. 1996). Petitioner in this case alleges ineffective assistance of trial counsel as cause to excuse his procedural default. Even assuming that Petitioner could establish cause, however, he cannot demonstrate prejudice as this claim lacks merit.

The Sixth Amendment to the United States Constitution provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him. . . ." U.S. Const. amend. VI. In *Bruton v. United States*, 391 U.S. 123, 126 (1968), the United States Supreme Court held that admission of a non-testifying co-defendant's confession at a joint trial violates the petitioner's right of confrontation even when the jury is instructed that the co-defendant's confession may not be used to determine the petitioner's guilt or innocence.

On direct examination of Lieutenant Morell, the following discussion occurred:

Q      Based on information from Mr. Green, did you take further action in this case?

A      Yes, I did.

Q      What did you do then?

A.      I had located and got Mr. West, Marco West in custody.

10/5/99 Trial Tr., p. 144.

On re-direct examination of Lieutenant Morell, the following discussion occurred:

Q      And did you get a statement from Lorenzo Green?

A      Yes.

Q      Was it consistent with what Kevin Green had told you as far as who did the homicide?

A.      Yes.  Along those lines.  It was a little different.  It implicated a second man, Mr. West, as opposed to what Kevin Green had told him.

* * *

Q.      You went and arrested who?

A.      Marco West.

Q.      That's when you talked to him and made this statement, is that correct?

A.      Correct.

*Id.* at pp. 202-03.

In reviewing this claim for plain error, the Michigan Court of Appeals cited *Bruton* and concluded that the claim lacked merit because Lorenzo Green's statement was not actually admitted into evidence and because Petitioner was able to confront Lieutenant Morell.  The court further held that even if an error occurred, it did not require reversal.  *See West*, 2002 WL 1998567 at *5.  This decision is neither contrary to United States Supreme Court nor an unreasonable application thereof.  Although Lieutenant Morell indicated that he took Petitioner into custody based upon

information from Lorenzo Green, Morell did not discuss the specific content of Green's statement and Green's statement was not actually admitted into evidence.  *See, e.g., Williams v. Jones*, 117 Fed. Appx. 406, 415 (6th Cir. 2004).   Furthermore, Lieutenant Morell's reference to Green's statement was not offered for the truth of the matter asserted, rather it was made to explain why Petitioner was taken into custody.  The Supreme Court has noted that the Confrontation Clause "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted."  *Crawford v. Washington*, 541 U.S. 36, 59 n. 9 (2004) (citing *Tennessee v. Street*, 471 U.S. 409, 414 (1985)).  Given such circumstances, Petitioner has not established a violation of his confrontation rights.

Moreover, even if Morell's reference to Green's police statement violated Petitioner's constitutional rights, Petitioner is not entitled to relief from this Court.  For purposes of federal habeas review, a constitutional error that implicates trial procedures is considered harmless if it did not have a "substantial and injurious effect or influence in determining the jury's verdict."  *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *see also O'Neal v. McAninch*, 513 U.S. 432, 445 (1995) (habeas court should grant petition if it has "grave doubt" about whether trial error had substantial and injurious effect or influence upon the jury's verdict).  Confrontation and *Bruton* errors are subject to harmless error analysis.  *See Delaware v. VanArsdall*, 475 U .S. 673, 684 (1986); *Schneble v. Florida*, 405 U.S. 427, 430 (1972).  Given that Lorenzo Green's statement was not itself admitted into evidence and given the significant evidence of guilt presented at trial, particularly Petitioner's own police statement, the Court concludes that any error in admitting Morell's testimony was harmless error.

Lastly, Petitioner has not established that a fundamental miscarriage of justice has occurred. The miscarriage of justice exception requires a showing that a constitutional violation probably resulted in the conviction of one who is actually innocent. *Schlup v. Delo,* 513 U.S. 298, 326-27 (1995). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 624 (1998). "To be credible, [a claim of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Schlup*, 513 U.S. at 324. Petitioner has made no such showing. Therefore, as a result of the foregoing analysis, Petitioner's claim is barred by procedural default, otherwise lacks merit, and does not warrant habeas relief.

D.    Procedural Default and the Remaining Claims

Petitioner also asserts that he is entitled to habeas relief due to prosecutorial misconduct and the ineffectiveness of trial and appellate counsel. Specifically, Petitioner alleges that the prosecutor engaged in misconduct by eliciting hearsay testimony from Lieutenant Morell and by failing to file suppression hearing transcripts with the Michigan Court of Appeals. Petitioner alleges that trial counsel was ineffective for failing to object to the appellate filing deficiency, for failing to object to prosecutorial misconduct, for failing to object to the admission of Petitioner's statement as fruit of the poisonous tree (arising from Green's suppressed police statement), and for failing to present a defense. Petitioner asserts that appellate counsel was ineffective for failing to raise the foregoing prosecutorial misconduct and ineffective assistance of trial counsel claims on direct appeal. Respondent contends that these claims are barred by procedural default because Petitioner first

raised them in his motion for relief from judgment and Petitioner has failed to establish that appellate counsel was ineffective.

Petitioner first presented his prosecutorial misconduct and ineffective assistance of trial counsel claims to the state courts in his motion for relief from judgment before the trial court. The trial court denied those claims, finding that Petitioner had failed to establish prejudice "in accordance with MCR 6.508." Both Michigan appellate courts denied leave to appeal "for failure to meet the burden of establishing entitlement to relief under MCR 6.508(D)."

As noted, federal habeas relief may be precluded on claims that a petitioner has not presented to the state courts in accordance with the state's procedural rules. *See Wainwright*, 433 U.S. at 85-87; *Coleman*, 244 F.3d at 539. A procedural default bars consideration of a federal claim on either direct or habeas review if the last state court rendering a judgment in the case rests its judgment on a state procedural bar. *See Harris*, 489 U.S. at 263-64; *see also Ylst*, 501 U.S. at 803-05.

Here, the Michigan appellate courts relied upon Michigan Court Rule 6.508(D) in denying leave to appeal. That rule provides, in part, that a court may not grant relief to a defendant if the motion for relief from judgment alleges grounds for relief which could have been raised on direct appeal, absent a showing of good cause for the failure to raise such grounds previously and actual prejudice resulting therefrom. *See* Mich. Ct. R. 6.508(D). The state court's decision, while brief, was based upon an independent and adequate state procedural rule. *See Simpson v. Jones*, 238 F.3d 399, 407 (6th Cir. 2000). Further, the record reveals that the trial court denied the motion for relief from judgment because Petitioner failed to establish prejudice under MCR 6.508. *Cf. Abela v.*

*Martin*, 380 F.3d 915, 922-23 (6th Cir. 2004) (Michigan Supreme Court's reference to MCR 6.508(D) may not be clear procedural default when a lower court denies relief on the merits).

Again, as previously discussed, a state prisoner who fails to comply with a state's procedural rules waives the right to federal habeas review absent a showing of cause for noncompliance and actual prejudice resulting from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice. *See Coleman*, 501 U.S. at 750; *Gravley*, 87 F.3d at 784-85. The "cause" standard in procedural default cases "requires the petitioner to show that some objective factor external to the defense impeded counsel's efforts to raise the claim in state court." *McCleskey v. Zant*, 499 U.S. 467, 493 (1991) (citations omitted). Such factors may include interference by officials, attorney error rising to the level of ineffective assistance of counsel, or a showing that the factual or legal basis for a claim was not reasonably available. *Id*. at 493-94.

Petitioner alleges ineffective assistance of appellate counsel as cause to excuse his procedural default. This claim itself, however, has been procedurally defaulted because Petitioner did not present the issue in his motion for relief from judgment before the state trial court and first raised it in the Michigan appellate courts. A claim of ineffective assistance of counsel asserted as cause to excuse a procedural default is itself an independent constitutional claim which requires proper exhaustion in state court. *See Edwards v. Carpenter*, 529 U.S. 446, 453 (2000). In *Kincade v. Stegall,* 2001 WL 279751, * 5 (E.D. Mich. Jan. 23, 2001), another judge in this district ruled that a habeas petitioner's claims were not properly exhausted when he failed to present them in his motion for relief from judgment before the trial court and first raised them when seeking leave to appeal before the Michigan Court of Appeals. The court explained that Michigan case law

suggested that a defendant who seeks post-conviction relief on a particular issue must first present the claim in the trial court to preserve the issue for appeal. *Id.* at *4 (citing *People v. Fannon*, 444 Mich. 964, 514 N.W.2d 772 (1994), in which the Michigan Supreme Court denied leave to appeal on the denial of a motion for relief from judgment without prejudice to the defendant filing a second motion for relief from judgment because the trial court was never presented with the affidavits and arguments contained in the application for leave to appeal).

This Court agrees with the reasoning in *Kincade* and concludes that Petitioner failed to properly present his ineffective assistance of appellate counsel claim to the state courts. Because Petitioner has procedurally defaulted his ineffective assistance of appellate counsel claim in the state courts, he cannot rely upon counsel's ineffectiveness to establish cause to excuse his procedural default. *See Coleman*, 268 F.3d at 432; *Jacobs v. Mohr*, 265 F.3d 407, 417-18 (6th Cir. 2001).

Furthermore, and alternatively, Petitioner has not shown that appellate counsel was ineffective. In *Strickland v. Washington,* 466 U.S. 668, 687 (1984), the United States Supreme Court set forth a two-pronged test for determining whether a habeas petitioner has received the ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment. Second, the petitioner must establish that the deficient performance prejudiced the defense. Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal. *Id.*

With respect to the performance prong, a petitioner must identify acts that were "outside

the wide range of professionally competent assistance" to prove deficient performance. *Id.* at 690. A habeas court's scrutiny of counsel's performance is highly deferential. *Id.* at 689. The court must recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 690.

To satisfy the prejudice prong under *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome. *Id.* "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *McQueen v. Scroggy*, 99 F.3d 1302, 1311-12 (6th Cir. 1996) (quoting *Strickland*, 466 U.S. at 686).

It is well-established that a criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *See Jones v. Barnes*, 463 U.S. 745, 754 (1983). The Supreme Court has explained:

> For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every "colorable" claim suggested by a client would disserve the ... goal of vigorous and effective advocacy.... Nothing in the Constitution or our interpretation of that document requires such a standard.

*Id.* at 754. Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). Petitioner has failed to show that by omitting the claims presented in his motion for relief from judgment appellate counsel's performance fell outside the wide range of professionally

competent assistance. Appellate counsel presented viable claims concerning the sufficiency of the evidence, the admissibility of Petitioner's police statement, the denial of a mistrial motion, the right of confrontation, and the substitution of counsel on direct appeal in the state courts. Petitioner has not shown that appellate counsel's strategy in presenting such claims and not raising the claims contained in the motion for relief from judgment was deficient or unreasonable. Petitioner has thus failed to show that appellate counsel was ineffective so as to establish cause to excuse his procedural default.

This Court need not address the issue of prejudice when a petitioner fails to establish cause to excuse a procedural default. *See Smith v. Murray*, 477 U.S. 527, 533 (1986); *Long v. McKeen*, 722 F.2d 286, 289 (6th Cir. 1983). Additionally, Petitioner has not established that a fundamental miscarriage of justice has occurred. *See* discussion *supra*. His prosecutorial misconduct and ineffective assistance of counsel claims are thus barred by procedural default, his ineffective assistance of appellate counsel further lacks merit, and none of those claims warrant federal habeas relief.

**V.      Conclusion**

For the reasons stated above, the Court concludes that Petitioner is not entitled to federal habeas relief on the claims contained in his petition. Accordingly;

**IT IS HEREBY ORDERED** that the petition for writ of habeas corpus [docket entry #1] is **DENIED**.

Furthermore, because an evidentiary hearing would not aid the Court's determination of the issues;

**IT IS FURTHER ORDERED** that the request for evidentiary hearing [docket entry #9] is **DENIED**.

Finally, the Court notes that before Petitioner may appeal this Court's dispositive decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

When a federal district court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims. *Id*. at 336-37.

When a federal district court denies a habeas claim on procedural grounds without addressing the claim's merits, a certificate of appealability should issue if it is shown that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *See Slack*, 529 U.S. at 484-85.

Having considered the matter, the Court concludes that Petitioner has failed to make a substantial showing of the denial of a constitutional right as to his sentencing, insufficient evidence,

confrontation, and ineffective assistance of appellate counsel claims, and that reasonable jurists would not find this court's procedural ruling on his prosecutorial misconduct and ineffective assistance of trial and appellate counsel claims debatable. Therefore, a certificate of appealability is not warranted in this instance. The Court further concludes that Petitioner should not be granted leave to proceed on appeal *in forma pauperis* as any appeal would be frivolous. *See* Fed. R. App. P. 24(a).

      **SO ORDERED**.

Dated:   April 29, 2008               s/Paul V. Gadola
                                       HONORABLE PAUL V. GADOLA
                                       UNITED STATES DISTRICT JUDGE

---

Certificate of Service

I hereby certify that on   April 29, 2008   , I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following:                      Laura A. Cook                 , and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participants:               Marco West              .

                                 s/Ruth A. Brissaud
                                 Ruth A. Brissaud, Case Manager
                                 (810) 341-7845